UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANK BERRY, HAYWOOD FOGGY, ET AL., individually and on behalf of others similarly situated, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 3:19-cv-00440-X |
| PreCC, INC. f/k/a PREMIER CC, INC.; ANTHONY URSO; NX UTILITIES, LLC; RDT CABLE SERVICES, LLC; NTX COMM GROUP, LLC; and ALPHA COMMUNICATIONS SERVICES, LLC, | § § § § § § § § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Well it looks like we need to have a jury trial on whether or not to eventually have a jury trial.[1]  This is a potential collective action for unpaid overtime under the Fair Labor Standards Act.  The plaintiffs worked as cable technicians installing and servicing cable systems first for PreCC, Inc. (PreCC) and then for NX Utilities, LLC (NX Utilities).

There are a bevy of pending motions, which this order takes in the turn it must.  First, defendants PreCC, Inc. and Anthony Urso moved to transfer this case to the

---

[1] *Cf.* Robert Wagner: Number Two, Austin Powers: International Man of Mystery (1997), *at* https://www.imdb.com/title/tt0118655/characters/nm0001822 (Number Two informing Dr. Evil that "[o]ver the last thirty years, Virtucon has grown by leaps and bounds. About fifteen years ago, we changed from volatile chemicals to the communication industry.  We own cable companies in thirty-eight states . . . [a]nd a factory in Chicago that makes miniature models of factories").

Northern District of Illinois, compel arbitration, and stay discovery. (Doc. 133).[2]

Second, that motion relied on a previously filed appendix, which the plaintiffs moved

to strike. (Doc. 151). Third, defendant NX Utilities, LLC moved to transfer venue

and compel arbitration (making similar arguments to that of PreCC and Urso). (Doc.

139). Fourth, PreCC and Urso moved to dismiss plaintiff Phillip Gallegos from the

case for his failure to timely submit full and complete discovery responses. (Doc. 135).

Fifth, NW Utilities filed a motion to dismiss. (Doc. 138). And sixth and finally, the

plaintiffs moved to conditionally certify a collective. (Doc. 124).

As explained below, the Court **DENIES** the motion to strike. Regarding

compelling arbitration, the Court (1) **DENIES** the motion to compel Esparza,

Gallegos, and Wesson to arbitrate, (2) **GRANTS** the motion to compel Howard,

Quezada, and Thompson to arbitrate, and (3) sets for jury trial the issue of the

existence of an arbitration agreement as to Anderson, Berry, Buckingham, and Irby.

The Court also stays discovery except for discovery related to the existence of a valid

agreement to arbitrate as to Anderson, Berry, Buckingham, and Irby.

Additionally, the Court **DENIES** PreCC and Urso's motion to dismiss Gallegos

but **DENIES** the plaintiffs' request for attorney's fees incurred in responding to that

motion. Further, the Court stays NX Utilities' motion to dismiss and the plaintiffs'

motion to conditionally certify a collective and will rule on those motions at the

appropriate time. Finally, the Court on its own motion **DISMISSES WITHOUT**

---

[2] Earlier on the day of that filing, PreCC and Urso filed another motion to transfer and compel arbitration at Doc. 132. They styled the motion addressed in this order as an amended one, and the parties only briefed up the amended motion. As such, the Court dismisses as moot the motion at Doc. 132 in light of the amended motion at Doc. 133.

**PREJUDICE** the plaintiffs' claims against RDT Cable Services, LLC, NTX Comm Group, LLC, and Alpha Communications Services, LLC.  The plaintiffs had 90 days to serve these defendants and failed to do so.

By separate order, the Court will set a jury trial and corresponding deadlines with regard to the existence of an arbitration agreement as to Anderson, Berry, Buckingham, and Irby.

## I.      Factual Background

The plaintiffs[3] were cable installers and servicers based in Texas working for PreCC and later for NX Utilities.[4]  They allege the defendants paid them a federal minimum wage for the first 40 hours they worked in a workweek and then used "contract groups" to make bonus payments to technicians on a piece-rate basis based on the number and type of jobs completed during a workday.  And these contract-group payments included deductions for administration and dispatch fees and chargebacks for damage at customer homes or lost equipment.  They contend they were never paid overtime for hours worked beyond 40 in a workweek.  The plaintiffs claim this framework did not pay them for work activities prior to arrival at the first job (even though they first had to report to the DeSoto office to load equipment for the day), travel between jobs, activities after the last job, and mandatory meetings.

The plaintiffs sued PreCC, NX Utilities, and Anthony Urso—who oversaw

---

[3] The eleven plaintiffs are: Frank Berry, Haywood Foggy, Ishmael Anderson, Shaun Buckingham, Gabriel Esparza, Phillip Gallegos, Larry Howard, Maffeo Irby, Francisco Quezada, Quincy Thompson, and John Wesson.

[4] NX Utilities purchased the PreCC cable installation business in July 2018.

PreCC's cable installation business—as well as three companies that were part of the contract groups (RDT Cable Services, LLC; NTX Comm Group, LLC; Alpha Communications Services, LLC). They seek to conditionally certify a collective of Texas-based cable technicians who worked for the defendants during the three years preceding this lawsuit and who (1) worked more than 40 hours a workweek, (2) did not receive overtime compensation for all hours worked over 40, and (3) did not receive minimum wage for all hours worked.

## II.    Legal Standard

There are way too many motions here. And that means putting all the legal standards here would ensure you forgot them all by the time we get to each motion. For your sake, the Court will embed each legal standard into the subsection for each motion. You're welcome.

## III.    Analysis

Chronologically, the parties filed (1) the plaintiffs' conditional certification motion (Doc. 124); (2) PreCC and Urso's motion to transfer and compel arbitration (Doc. 133); (3) PreCC and Urso's motion to dismiss plaintiff Gallegos (Doc. 135); (4) NX Utilities' motion to dismiss (Doc. 138); (5) NX Utilities' motion to transfer or compel arbitration (Doc. 139); and (6) the plaintiffs' motion to strike the appendix on PreCC and Urso's motion to transfer and compel arbitration (Doc. 151). Here, chronological is anything but logical. The Court must first consider whether it should have the case (filings 2, 5, and 6 above), then whether there is a case (items 3 and 4 above), and finally whether others should join this case (item 1 above).

A. Motions to Transfer and Compel Arbitration
(and Strike Appendix)

The motions to transfer and compel arbitration (from PreCC and Urso and

separately from NX Utilities) first contend that most of the current plaintiffs signed

arbitration agreements mandating single party AAA arbitration in Chicago and that

other plaintiffs are bound by the arbitration agreement because they continued

working after the agreements were rolled out.  The plaintiffs moved to strike some of

the documentary support for these motions, including portions of Urso's first and

second declarations and a July 5, 2017 email. Substantively, the plaintiffs respond

that some of the signatures on the agreements were forged, that PreCC lacks

standing to compel arbitration because it sold its assets to NX Utilities, and that the

defendants failed to meet their evidentiary burden.  The Court will address the

motion to strike and then compel arbitration.

1. Motion to Strike

The legal standard for a motion to strike evidence supporting a motion to

compel arbitration is the summary judgment standard.[5]   Under the summary

judgment evidentiary standard, a "declaration used to support or oppose a motion

must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters

stated."[6]  The Rules of Civil Procedure relaxed the previous standard to require only

---

[5] *See Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–44 (N.D. Tex. 2019)
(Scholer, J.) (collecting cases applying summary judgment standard).

[6] FED. R. CIV. P. 56(c)(4).

that evidence be "capable of being presented in a form that would be admissible," which allows consideration of unauthenticated documents at summary judgment.[7] Rule 56 then allows an opponent of such evidence to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[8]  Hearsay is inadmissible unless it falls under an exception or exclusion.[9]

The motion to strike first attacks an email chain regarding the execution of an arbitration agreement and the related paragraphs of Urso's declarations for failure to meet the business-records exception to the hearsay rule and Urso's failure to have personal knowledge that Berry signed the arbitration agreement.  The plaintiffs contend the defendants fail to show an authenticating employee whose business duty was keeping such records, and they also claim to poke holes in the trustworthiness of the record in light of confusion on dates of execution, who executed for PreCC, and redactions in the email string.  The defendants respond that their business records declaration is enough to show the documents would be admissible at trial and that the plaintiffs confuse admissibility with weight.  The Court agrees with the defendants that it should not strike the email chain and related portions of Urso's declarations.

The Rule 56 standard requires the evidence to be capable of being admissible at trial.  Sure, the plaintiffs poke holes in this evidence by querying whether the defendants have the right affiant.  But these points do not indicate the defendants

---

[7] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016).

[8] FED. R. CIV. P. 56(c)(2).

[9] FED. R. EVID. 801–07.

could not present an appropriate witness at trial to do such things as authenticate the relevant documents.  And in any event, the declarations meet the standard under Rule 803(6) for business records[10]—which is all the Fifth Circuit requires.[11] Furthermore, whether Urso has personal knowledge that Berry signed the arbitration agreement is rather irrelevant as the agreement itself fits within the business records exception to the hearsay rule.  As a result, the Court **DENIES** the motion to strike and will consider the evidence.

> 2.  Motions to Transfer and Compel Arbitration

Next, the Court turns to the motions to transfer and compel arbitration which are based on a Chicago forum selection clause[12] and a clause requiring arbitration of Fair Labor Standards Act claims.  Transferring or compelling arbitration hinges on whether the plaintiffs are bound by the agreements.  There is no hard and fast rule on what order courts should use to take up motions to transfer and motions to compel arbitration.  The only such concrete notion might be that if the court lacks jurisdiction, it has no business compelling arbitration (which stays the case until the

---

[10] FED. R. EVID. 803(6) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.").

[11] *See U.S. v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (confirming that tracking Rule 803(6)'s requirements makes records attached to a business records affidavit admissible).

[12] "Any and all claims arising out of this Agreement shall only be submitted to courts (or arbitration) located within the County of Cook, State of Illinois, or the U.S. District Court for the Northern District of Illinois."  Doc. 49 at 11.

arbitration award comes back).  There is no argument here that this Court lacks jurisdiction.

Here, the Court chooses to address arbitration first.  As explained below, not all the plaintiffs signed the agreements with forum selection and arbitration clauses. That triggers a complicated analysis under binding Fifth Circuit precedent for transferring a case when only some parties agreed to a forum selection clause.[13]  The analysis for compelling arbitration where some but not all parties signed is more straightforward.

As such, the Court turns to the motions to compel arbitration.  The defendants contend PreCC rolled out arbitration agreements in 2017 with its cable technicians that required arbitration of Fair Labor Standards Act disputes in Chicago, Illinois as individual actions.  The plaintiffs counter that some of them dispute signing the agreements, Urso did not sign them all for PreCC, and some lack a witness.  The Court must address the unique circumstances as to each plaintiff.

But first, we need to address the legal standard for compelling arbitration. Courts must first determine "whether the parties agreed to arbitrate the dispute in question," and then determine whether any external legal constraints foreclose

---

[13] *See In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014) ("We are persuaded that the severance-and-transfer inquiry in situations where some but not all parties have entered into a forum selection clause ought go as follows: First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum.  Second, the district court must consider the private factors of the parties who have not signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis.  Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit.").

arbitration of the dispute.[14]   The first step has two sub-steps: (1) whether a valid arbitration agreement exists, and (2) whether the dispute is in the scope of that arbitration agreement.[15]   A key issue here regards whether a signed agreement is needed for an agreement to arbitrate.  It is not.  Whether Illinois or Texas law governs this case, notice of an arbitration policy and continued work is acceptance of that agreement.  In Texas, "[i]f the employee receives notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law[.]"[16]  In Illinois, notice of a new arbitration policy plus continued employment "indicate[s] mutual assent to mandatory arbitration."[17]

Procedurally under the Federal Arbitration Act, "[a] district court must hold a trial on the existence of an arbitration agreement if a motion to compel arbitration is filed and 'the making of the arbitration agreement . . . [is] in issue."[18]  An opponent of arbitration makes the agreement an issue if they "unequivocal[ly] den[y] that [they] agreed to arbitrate and produce some evidence supporting [their] position."[19] If the opponent meets this burden of putting the agreement in issue, the party supporting arbitration then must prove the existence of an agreement by a

---

[14] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (per curiam).

[15] *Id.* at 258.

[16] *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006).

[17] *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 714 (7th Cir. 2019).

[18] *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363 (5th Cir. 2015) (quoting 9 U.S.C. § 4) (alterations in original).

[19] *Id.* (quotation marks omitted) (alterations in original).

preponderance of the evidence.[20]

The simplest cases to resolve are that of Esparza, Gallegos, and Wesson. They need not arbitrate because it is undisputed they are not bound by the arbitration agreement. Wesson left before PreCC before it rolled out the employment agreement, and Esparza and Gallegos were never PreCC employees. To the extent the motions to compel arbitration seek to compel those of Esparza, Gallegos, and Wesson, the Court denies them.

The above legal standard demonstrates that Howard, Quezada, and Thompson must arbitrate this dispute. The existence of an arbitration agreement is not an issue for these three plaintiffs. They contend there is no evidence they signed the arbitration agreement, and Quezada and Thompson also argue there was no witness. But this falls short of the legal requirement of an unequivocal denial of an agreement to arbitrate along with evidence that is needed to put the existence of an arbitration agreement in dispute.[21] The Court concludes that the defendants have shown by a preponderance of the evidence that valid arbitration agreements bind Howard, Quezada, and Thompson, and this lawsuit falls within the scope of those agreements. The defendants filed arbitration agreements that Howard, Quezada, and Thompson purportedly signed,[22] these plaintiffs do not dispute their signatures, and those agreements require arbitration of Fair Labor Standards Act claims such as the ones

---

[20] *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005) (per curiam).

[21] *Chester*, 607 F. App'x at 363.

[22] The signed agreements are at Doc. 49 at 23–27 (Thompson), 28–32 (Howard), and 33–37 (Quezada).

in this lawsuit.   Finally, no party has demonstrated that any external legal constraints foreclose arbitration of this dispute as to these plaintiffs.

One question regarding compelling arbitration as to Howard, Quezada, and Thompson is whether their claims against NX Utilities go to arbitration or stay here.[23]   The Fifth Circuit has allowed non-signatories to compel arbitration "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract."[24]   Not only is NX Utilities substantially interdependent by virtue of it purchasing PreCC's assets, the plaintiffs have argued that only NX Utilities may assert a contractual argument on compelling arbitration.[25]   Accordingly, the Court will send Howard, Quezada, and Thompson's claims against PreCC, Urso, and NX Utilities to arbitration in accordance with the agreements.

Two lingering questions remain as to these parties that must arbitrate.   The first is whether the arbitration is collective or must be individual.   The arbitration

---

[23] The plaintiffs argue that the sale of PreCC's assets to NW Utilities relinquished PreCC's right to compel arbitration.   Even if PreCC conveyed the hybrid agreements to NX Utilities, this ignores the fact that PreCC is simply asserting a right that it contractually possessed at the time it employed the plaintiffs.   *See Hacienda Records, L.P. Ramos*, 718 F. App'x 223, 233 (5th Cir. 2018) (holding that an assignor retains rights preceding the effective date unless there is express language to the contrary).   And as to Urso, the plaintiffs never make an argument specific to Urso that is different than as to PreCC.   Because the Court rejects the plaintiffs' PreCC arguments as to Howard, Quezada, and Thompson, the Court must necessarily compel arbitration as to the plaintiffs' claims against Urso as well.

[24] *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000).

[25] Doc. 149 at 17 ("The Asset Purchase Agreement shows that Premier assigned of all of its rights, titles, and interests in and to any hybrid employee agreements (the 'arbitration agreements') to NX Utilities, LLC under §2.01(a)(xv) of the Asset Purchase Agreement.").

clauses require that Fair Labor Standards Act arbitrations may "only be brought as individual actions, and all parties waive any right to pursue arbitration as a class, collective or representative action."[26]  Nonetheless, the Court cannot order separate arbitrations.  According to the Fifth Circuit, "arbitrators should decide whether class arbitration is available or forbidden[.]"[27]  As such, the Court will send Howard, Quezada, and Thompson's disputes to arbitration and let the arbitrators decide whether the agreements collective arbitration is available or forbidden.

The final lingering question for those who must arbitrate is what to do about the contract-group entity defendants: RDT Cable Services, LLC, NTX Comm Group, LLC, and Alpha Communications Services, LLC.  The Court granted leave for the plaintiffs to file their second amended complaint on February 11, 2020.  The plaintiffs complied and filed their second amended complaint on February 24, 2020—which added the three contract-group LLCs.  To date, there is no indication the plaintiffs served these three additional defendants.  Federal Rule of Civil Procedure 4(m) establishes a 90-day window to serve defendants or the Court may dismiss them without prejudice.[28]  This time period ran on May 20, 2020.  We are way past that.  Accordingly, pursuant to Rule 4(m), the Court hereby **DISMISSES WITHOUT PREJUDICE** the plaintiffs' claims against unserved defendants RDT Cable

---

[26] *See, e.g.*, Doc. 49 at 12.

[27] *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 363 (5th Cir. 2003).

[28] FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

Services, LLC, NTX Comm Group, LLC, and Alpha Communications Services, LLC.

That leaves unresolved the five remaining plaintiffs: Anderson, Berry, Buckingham, Irby, and Foggy. There is no signed agreement as to Foggy, and the other four plaintiffs dispute that they signed the agreement and claim they ever had notice of it.[29] As to Foggy, he has not unequivocally disputed the existence of an arbitration agreement or offered evidence—such that a trial on the existence of an agreement is required. And given his lack of evidence, the Court concludes the defendants have shown by a preponderance of the evidence that Foggy was on notice of the terms due to the July 2017 rollout of the agreement,[30] Foggy's claims are within the scope of that agreement, and no party has demonstrated that any external legal constraints foreclose arbitration of this dispute.

By contrast, Anderson, Berry, Buckingham, and Irby denied they signed the agreement or had notice of its terms.[31] This directly contradicts Urso's declaration that these four plaintiffs signed the agreements and PreCC notified all the cable technicians in the DeSoto office in the July 2017 rollout of the agreement's terms.[32]

---

[29] The signed agreements are at Doc. 49 at 16–20 (Berry), 38–42 (Irby), 43–47 (Anderson), and 48–52 (Buckingham).

[30] *See supra* note 32.

[31] Berry's declaration states that he "was not asked to sign an arbitration agreement or a [PreCC] 'Hybrid Employee Agreement,'" he "did not sign a document called a 'Hybrid Employee Agreement' at any time," and he "unequivocally den[ied] that [he] was ever told by Anthony Urso or any [PreCC] manager that [PreCC] had a policy or agreement requiring the arbitration of legal claims or requiring legal claims to be brought in Illinois." Doc. 150 at 5–6. Anderson, Buckingham, and Irby declared that "[n]o [PreCC] manager or supervisor ever communicated to me that [PreCC] had a policy requiring cable technicians to arbitrate their legal claims against the company" and that they "did not sign" the employee agreement. Doc. 150 at 13 (Anderson), 14–15 (Irby), and 17 (Buckingham).

[32] Urso declared that PreCC only used one employment agreement (which contains the forum-selection and arbitration clauses at issue) and that PreCC rolled out the agreement in July 2017 to all its hybrid cable technicians, such as the plaintiffs in this suit. Urso declared:

13

So, what now?  A trial is required.  But what it looks like depends on whether

the Federal Arbitration Act or Illinois Arbitration Act govern.  The defendants argue

Illinois state law controls because of a choice of law clause, and that an evidentiary

hearing will suffice to resolve the question of the existence of an arbitration

agreement.[33]  The plaintiffs counter that the agreement did not expressly call on

Illinois arbitration law to apply, so the Federal Arbitration Act applies and requires

a jury trial.[34]  The Court agrees with the plaintiffs.

The Fifth Circuit's standard is to "permit[] arbitration under non-[Federal

Arbitration Act] rules if a contract expressly references state *arbitration* law."[35]

Perhaps this is because the Supreme Court has considered whether a choice-of-law

clause busts up an arbitration clause and held that "choice-of-law provision covers

the rights and duties of the parties, while the arbitration clause covers arbitration;

---

> I am (and throughout 2017 was) [Chief Operating Officer] and a custodian of
> records for PreCC.  Based on Company business records I saw at the time and my own
> communications with management employees in Dallas/Ft. Worth (the DeSoto
> Warehouse), I can testify that in July 2017 the Company distributed *Hybrid Employee
> Agreements* to hybrid technicians in the DeSoto Warehouse—including Plaintiffs
> Francisco Quezada, Frank Berry and Haywood Foggy.  For the same reasons
> (Company business records I saw at the time and my own communications with the
> management employees at the DeSoto Warehouse), I can testify that after July 2017
> the Company distributed the *Hybrid Employee Agreements* to newly-hired hybrid
> technicians in the DeSoto Warehouse—including Quincy Thompson, Maffeo Irby,
> Ishmael Anderson, Larry Howard and Shaun Buckingham.

Doc. 134 at 3.

[33] *See* 710 ILCS § 5/2 ("[I]f the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party[.]"); *Sturgill v. Santander Consumer USA, Inc.*, 48 N.E.3d 759, 767 (Ill. App. 2016).

[34] 9 U.S.C. § 4 ("Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure[.]").

[35] *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 790 (5th Cir. 2015) (emphasis added).

14

neither sentence intrudes upon the other."[36]  Here, there certainly is a choice-of-law clause referring to Illinois law.[37]  But this is not enough for the Supreme Court or the Fifth Circuit because there is no express reference to Illinois arbitration law. Accordingly, the Federal Arbitration Act procedure controls, and there must be a jury trial on whether an arbitration agreement binds Anderson, Berry, Buckingham, and Irby.

In total on arbitration, the Court DENIES the motion to compel Esparza, Gallegos, and Wesson to arbitrate, GRANTS the motion to compel Howard, Quezada, and Thompson, and sets for jury trial the issue of the existence of a binding arbitration agreement as to Anderson, Berry, Buckingham, and Irby.

The motions also requested a stay of discovery if arbitration occurs.  The Court stays discovery except for discovery related to the existence of a valid agreement to arbitrate as to Anderson, Berry, Buckingham, and Irby.

### B.  Motion to Dismiss Plaintiff Gallegos

In the next motion, PreCC and Urso ask the Court to dismiss plaintiff Gallegos for failure to provide full and complete discovery responses.  The plaintiffs respond that this is circumventing the discovery process and ask for attorney's fees for responding.  The Court agrees with the plaintiffs that it should deny the motion but will refrain from awarding the plaintiffs their attorney's fees.

There are many problems with this motion.  At base, the motion seeks

---

[36] *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995).

[37] Doc. 49 at 11 ("This agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of Illinois[.]").

dismissal with prejudice for a discovery dispute where the defendants failed to follow the established process for compelling responses.  Second, such motions are only to be used when less drastic measures won't work.[38]  But the defendants never tried the less drastic measure of a motion to compel (or conferring in good faith with opposing counsel) before running to the Court for death-penalty sanctions.  As such, the Court **DENIES** the motion to dismiss Gallegos.

But the Court will stop short of awarding fees to the plaintiffs for responding. Yes, the defendants should have followed *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*,[39] and conferred with the plaintiffs and moved to compel before moving to dismiss.  But so too could the plaintiffs have supplied more complete responses prior to or after the filing of the motion to dismiss Gallegos.  They too behave in a way that falls short of *Dondi*.  As a result, the Court **DENIES** the plaintiffs' request for attorney's fees for responding to PreCC and Urso's motion to dismiss Gallegos.

### C.  NX Utilities' Motion to Dismiss and Motion to Conditionally Certify the Collective

The final two motions are NX Utilities' motion to dismiss and the plaintiffs' motion to conditionally certify a collective.  Given that the Court ruled that the claims against NX Utilities from plaintiffs with an enforceable agreement must arbitrate, it is premature to address the motion to dismiss.  And the Court would need to resolve any motion to dismiss prior to ruling on a motion to certify a collective.  As such, the

---

[38] *Yazdchi v. American Honda Fin. Corp.*, 217 F.App'x 299, 302 (5th Cir. 2007).

[39] 121 F.R.D. 284, 289–90 (N.D.Tex. 1988) (en banc).

16

Court stays these motions and will rule on them at the appropriate time.

## IV.    Conclusion

As explained below, the Court **DENIES** the motion to strike.  Regarding compelling arbitration, the Court (1) **DENIES** the motion to compel Esparza, Gallegos and Wesson to arbitrate, (2) **GRANTS** the motion to compel Howard, Quezada, and Thompson, and (3) sets for jury trial the issue of the existence of an arbitration agreement as to Anderson, Berry, Buckingham, and Irby.  The Court also **DENIES** PreCC and Urso's motion to dismiss Gallegos but **DENIES** the plaintiffs' request for attorney's fees incurred in responding to that motion.  Additionally, the Court stays NX Utilities' motion to dismiss and the plaintiffs' motion to conditionally certify a collective.  Finally, the Court on its own motion **DISMISSES WITHOUT PREJUDICE** the plaintiffs' claims against RDT Cable Services, LLC, NTX Comm Group, LLC, and Alpha Communications Services, LLC.

**IT IS SO ORDERED** this 9th day of December, 2020.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE